UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEX VORBURGER,<br>on behalf of himself and all<br>others similarly situated,<br><div align="center">Plaintiff,</div><br>-v-<br>PERFECT MOVING AND STORAGE LLC,<br>SUMMER MOVING CORP, ROCK KATNIC,<br>and JOHANNA ULLOA<br><div align="center">Defendants.</div> | CIVIL ACTION NO. 25 Civ. 6387 (DEH) (SLC)<br><br>**OPINION AND ORDER** |

**SARAH L. CAVE**, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff Alex Vorburger ("Mr. Vorburger") brings this class and collective action against

Defendants Perfect Moving and Storage LLC ("Perfect Moving"), Summer Moving Corp ("Summer

Moving"), Rock Katnic ("Mr. Katnic"), and Johanna Ulloa ("Mrs. Ulloa") (collectively,

"Defendants") seeking to recover unpaid overtime wages and related relief pursuant to the Fair

Labor Standards Act, as amended, 29 U.S.C. §§ 201 et seq. ("FLSA"), New York Labor Law, §§ 190

et seq. ("NYLL"), as well as claims under Connecticut, Florida, and New Jersey law.  (Dkt. No. 1

(the "Complaint")).  Before the Court is Defendants' motion to compel arbitration, strike Mr.

Vorburger's class and collective action claims, and stay this action during the pendency of the

arbitration (the "Arbitration") pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the

"FAA").  (Dkt. Nos. 23–25 (the "MTCA")).[1]  We also consider Mr. Vorburger's cross-motion to compel limited discovery.  (Dkt. No. 28 at 34–35 (the "MTC")).[2]

For the reasons stated below, the MTCA is GRANTED, Mr. Vorburger's class and collective action claims are STRICKEN, this case is STAYED during the pendency of the Arbitration, and the MTC is DENIED as moot.

## II. <u>BACKGROUND</u>

### A.  <u>Factual Background</u>[3]

#### 1.      <u>Defendants</u>

Defendants own and operate interstate delivery and moving companies that operate through the tri-state area (New York, New Jersey, and Connecticut) and Florida.  (Dkt. Nos. 1 ¶ 3; 32 ¶ 4).  Mr. Katnic and Mrs. Ulloa, a husband-and-wife, share common ownership of Perfect Moving and Summer Moving.  (Dkt. Nos. 1 ¶ 17; 25 ¶ 4; 34 ¶¶ 4–5).

---

[1] We decide the MTCA, which the Honorable Dale E. Ho referred (Dkt. No. 5), by opinion and order because "[m]otions to compel arbitration are non-dispositive and therefore within a magistrate judge's purview to 'hear and determine' pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a)."  <u>Xiaohong v. Dingledine</u>, No. 23 Civ. 11094 (GHW) (RFT), 2025 WL 1604001, at *1 n.2 (S.D.N.Y. June 6, 2025).

[2] Mr. Vorburger did not file any notice of motion with respect to the MTC, but rather included it as a request in his opposition brief.  (Dkt. No. 28 at 34–35).

[3] "Courts deciding motions to compel [arbitration] apply a standard similar to the one applicable to a motion for summary judgment, meaning that they can consider relevant evidence outside the complaint."  <u>Gordon v. Wilson Elser Moskowitz Edelman & Dicker LLP</u>, No. 22 Civ. 5212 (JPC) (JEW), 2023 WL 2138693, at *1 n.1 (S.D.N.Y. Feb. 21, 2023) (quoting <u>Starke v. SquareTrade, Inc.</u>, 913 F.3d 279, 281 n.1 (2d Cir. 2019)).  "On a motion for summary judgment, the court considers all relevant, admissible evidence submitted by the parties and contained in the pleadings, depositions, answers to interrogatories, admissions and affidavits, and draws all reasonable inferences in favor of the non-moving party."  <u>Gordon</u>, 2023 WL 2138693, at *1 n.1.  Accordingly, the following factual background is drawn from the allegations in the Complaint (Dkt. No. 1), the documents it incorporates by reference, and the declarations and exhibits submitted by the parties.  <u>See</u> <u>id.</u> at *1 & n.1 (considering same with respect to a motion to compel arbitration under the FAA); <u>Citigroup Inc. v. Sayeg</u>, No. 21 Civ. 10413 (JPC), 2022 WL 179203, at *1 & n.1 (S.D.N.Y. Jan. 20, 2022) (same with respect to a petition to compel arbitration under the FAA).

### 2.   Mr. Vorburger's relationship with Defendants

On May 19, 2023, Defendants hired Mr. Vorburger as a driver and mover for a period of ten weeks between May and July 2023.  (Dkt. Nos. 1 ¶¶ 40–41; 32 ¶ 3).  Mr. Vorburger's primary duty was to "physically transport customers' household goods and other property in Defendants' trucks" across state lines.  (Dkt. No. 32 ¶ 9).  While working for Defendants, Mr. Vorburger personally transported goods interstate on at least 149 occasions.  (Id.)  Most frequently, he drove from New York to New Jersey to transport goods to and from Defendants' storage facility in New Jersey, but he also drove as far as Florida and California to deliver goods for customers.  (Id. ¶¶ 13, 16).  As an employee, Mr. Vorburger worked 33 hours of overtime per week, but Defendants did not pay him overtime wages.  (Dkt. No. 1 ¶ 44).  Defendants also reduced Mr. Vorburger's hourly rate to $11.63 and withheld tips from him.  (Id. ¶¶ 44, 46).

In June 2023, Defendants instructed Mr. Vorburger to create a company to work as an independent contractor rather than an employee.  (Dkt. Nos. 1 ¶ 47; 32 ¶ 19).  On June 20, 2023, Mr. Vorburger complied and created Innozent Corp, but his status did not officially change to an independent contractor until August 1, 2023.  (Dkt. Nos. 1 ¶¶ 48–49; 34 ¶ 7; see Dkt. Nos. 32 ¶ 22; 34-1).  While Mr. Vorburger was an independent contractor, Defendants compensated him on a "per-job basis," although he completed some jobs without any pay at all.  (Dkt. No. 1 ¶¶ 54–55).  As an independent contractor, Defendants did not pay Mr. Vorburger overtime wages and reduced his hourly pay to less than $22.50.  (Id. ¶¶ 53, 56; see Dkt. No. 32 ¶ 23).

In March 2025, Mr. Vorburger complained to Defendants about his wages, requesting payroll corrections and indicating when he had been underpayed.  (Dkt. No. 1 ¶¶ 85–87).  On

3

April 16, 2025, Defendants terminated Mr. Vorburger as an independent contractor.  (Dkt. Nos. 1 ¶ 90; 32 ¶ 3; 34 ¶ 6).

### 3.  The Arbitration Agreement

On June 22, 2023, Mr. Katnic, on behalf of Perfect Moving and Mr. Vorburger executed an independent contractor agreement.  (Dkt. Nos. 30-3; 34-3 (the "ICA")).  The parties agreed that the ICA "shall be governed by and construed in accordance with the laws of the State of New York."  (Dkt. Nos. 30-3 ¶ 10(a); 34-3 ¶ 10(a)).  Schedule B of the ICA is an arbitration agreement "governed by the [FAA]."  (Dkt Nos. 25-1; 34-2) (the "Arbitration Agreement")).[4]  The Arbitration Agreement provides: "**BY AGREEING TO ARBITRATE ALL DISPUTES, THE PARTIES TO THIS AGREEMENT AGREE THAT ALL SUCH DISPUTES WILL BE RESOLVED THROUGH BINDING ARBITRATION BEFORE AN ARBITRATOR AND NOT BY WAY OF A COURT OR JURY TRIAL**."  (Dkt. Nos. 25-1 ¶ 1; 34-2 ¶ 1).  Pursuant to the Arbitration Agreement, Mr. Vorburger and Defendants agreed to arbitrate the following claims:

> . . . (iii) disputes arising out of or relating to payments made to Contractor [Mr. Vorburger] for services provided; (iv) disputes arising out of or relating to any other aspect of the Contractor's relationship with the Company, past or present, whether arising out of or under federal, state or local statutory, regulatory and/or common law; (v) disputes arising out of or relating to this Agreement or any portion of this Agreement or its interpretation, enforceability, applicability, unconscionability, arbitrability, or formation, or whether the Agreement or any portion of it is void or voidable, with the exception noted below in paragraph 1(c), the Class Action Waiver; and (vi) any disputes related to Contractor's use of the Company's equipment.  This Agreement also applies, without limitation, to claims or disputes regarding any federal, state or local wage-hour law; trade secrets; unfair competition; compensation; meal or rest periods; expense reimbursement; uniform maintenance; discrimination or harassment; and claims arising under the Americans with Disabilities Act, Age Discrimination in Employment Act, Family and Medical Leave Act, Fair Labor Standards Act, Title VII of the Civil Right Act of 1964,

---

[4] Although Mr. Vorburger claims that he does not recall signing the Arbitration Agreement, he does not challenge its authenticity.  (See Dkt. No. 32 ¶ 21).

Employee Retirement Income Security Act, and state or local statutes, if any, addressing the same or similar subject matters, and all other federal, state or local statutory and common law claims, including claims for breach of contract.

(Dkt. Nos. 25-1 ¶ 1(a); 34-2 ¶ 1(a)).  The Arbitration Agreement also contains a "Class Action

Waiver":

There will be no right or authority for any claim and/or dispute to be brought, heard or arbitrated as a class, collective or representative action ("Class Action Waiver").  The arbitrator shall not have any authority to hear or arbitrate any such class, collective or representative action. Regardless of anything else in this Agreement and/or rules or rules of procedures that might otherwise apply by virtue of any arbitration organization rules or procedures, including without limitation the rules of the American Arbitration Association, the enforceability and validity of this Class Action Waiver may be determined only by a court and not by an arbitrator. In addition, this Class Action Waiver must be litigated in a civil court of competent Jurisdiction.  However, the Class Action Waiver shall be severable in any case in which the dispute is filed as an individual action and severance is necessary to ensure that the individual action proceeds in arbitration.

(Dkt. Nos. 25-1 ¶ 1(c); 34-2 ¶ 1(c)).

### B. **Procedural History**

On August 4, 2025, Mr. Vorburger filed the Complaint asserting on behalf of a putative

class and collective the claims under the FLSA and NYLL.  (Dkt. No. 1).  Mr. Vorburger does not

reference the Arbitration Agreement in the Complaint.   (See id.)  On October 10, 2025,

Defendants filed the MTCA.  (Dkt. No. 23–25).  On October 24, 2025, Mr. Vorburger filed his

opposition to the MTCA and the MTC.  (Dkt. Nos. 28; 30; 32).  In the MTC, Mr. Vorburger is seeking

"narrow, limited discovery as to the applicability of the FAA [Section] 1 exception."  (Dkt. No.  28

at 34–35).  On October 31, 2025, Defendants filed a reply.  (Dkt. No. 33–34).

### III.  DISCUSSION

**A.  Legal Standard**

Under the FAA, a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2.  "The FAA embodies a national policy favoring arbitration founded upon a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, their disputes." Gordon, 2023 WL 2138693, at *2 (quoting Doctor's Assocs. v. Alemayehu, 934 F.3d 245, 250 (2d Cir. 2019)).[5]  "Because the FAA intended to place arbitration agreements upon the same footing as other contracts, arbitration remains a creature of contract." Gordon, 2023 WL 2138693, at *2 (quoting Doctor's Assocs., 934 F.3d at 250).

The FAA exempts, however, "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.  The Section 1 exemption specifically covers maritime and railroad employees, as well as a "residual category" of classes of workers engaged in interstate commerce. Islam v. Lyft, Inc., 524 F. Supp. 3d 338, 343–344 (S.D.N.Y. 2021).  Employees within the Section 1 exemption "cannot be compelled to arbitrate under the FAA[.]" Id. at 343.

The Supreme Court provided a framework for determining who falls within the residual category of interstate commerce workers in Southwest Airlines Co. v. Saxon, 596 U.S. 450 (2022).  First, a court must "defin[e] the relevant class of workers" to which the party resisting arbitration belongs. Id. at 455.  Second, a court must "determine whether that class of workers is engaged in foreign or interstate commerce." Id.  "[T]he relevant inquiry under Section [1] is not whether

---

[5] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

the plaintiff himself is engaged in interstate commerce, but whether he belongs to a class of workers that is." Islam, 524 F. Supp. 3d at 349.

If a party to an arbitration agreement is exempt from the FAA, a court may still apply state law to enforce the arbitration agreement because "[t]he effect of the FAA's inapplicability, pursuant to Section 1, is merely to leave the arbitrability of disputes in the excluded categories as if the [FAA] had never been enacted." Valdes v. Swift Transp. Co., Inc., 292 F. Supp. 2d 524, 529 (S.D.N.Y. 2003); see Islam, 524 F. Supp. 3d at 359 (applying New York state law to arbitration agreement when plaintiff fell within Section 1 exemption); Diaz v. Mich. Logistics Inc., 167 F. Supp. 3d 375, 381 (E.D.N.Y. 2016) (collecting cases applying state law in the absence of FAA applicability).

## B. Application

Mr. Vorburger argues that the Court cannot compel him to arbitrate his claims because he is a transportation worker engaged in interstate commerce under the Section 1 exemption. (Dkt. No. 28 at 12–18). He also argues that the class action waiver is not enforceable. (Id. at 23– 30). Defendants dispute that the Section 1 exemption applies, and argue that, even if the FAA does not compel arbitration, the Court should compel Mr. Vorburger to arbitrate his claims under New York law, which also permits enforcement of the class action waiver. (Dkt. No. 33).

We first analyze whether Mr. Vorburger falls within the FAA's Section 1 exemption before turning to whether New York law compels arbitration. (Sections III.B.1, 2.a., b., infra). We then consider whether the class action waiver is enforceable under New York law. (Section III.B.2.c., infra).

### 1.  The Section 1 exemption applies

Mr. Vorburger argues that, as "a driver for an interstate moving company who personally transported customers' property across state lines on more than 149 occasions[,]" he falls within the Section 1 exemption.  (Dkt. No. 28 at 12).  Defendants argue that most of Mr. Vorburger's work consisted of transporting goods for customers within New York and thus he does not belong to a class of workers involved in interstate commerce.  (Dkt. No. 33 at 2–3).

#### a.  The Court, not the arbitrator, determines the applicability of Section 1

As an initial matter, the Court, not the arbitrator, decides the question of whether the Section 1 exemption applies.  See Gabay v. Roadway Movers, Inc., 671 F. Supp. 3d 371, 379 (S.D.N.Y. 2023) (citing New Prime v. Oliveira, 586 U.S. 105, 111 (2019)).  The duty to determine the applicability of the Section 1 exemption falls on the Court "[b]ecause a court cannot compel arbitration for arbitration agreements that fall within [Section] 1[.]"  Gabay, 671 F. Supp. 3d at 381.

#### b.  Mr. Vorburger is within a class of workers engaged in interstate commerce

Under Saxon, we must first define the class of workers to which Mr. Vorburger belongs based on the "actual work that the members of the class, as a whole, typically carry out."  Gabay, 671 F. Supp. 3d at 383–384 (quoting Saxon, 596 U.S. at 456).  Mr. Vorburger was a driver and mover who "physically transport[ed] customers' household goods and other property . . . across state lines[.]" (Dkt. No. 32 ¶¶ 3, 9). Mr. Vorburger frequently drove to and from customer homes in New York to Defendants' storage facility in New Jersey but also drove cross-country to complete certain jobs for Defendants.  (Id. ¶¶ 13, 16).  Mr. Vorburger lists thirteen interstate routes that he performed while working for Defendants.  (Id. ¶ 12).  He also supplies what

8

appears to be screen shots of his calendar detailing the routes and text messages with Mr. Katnic discussing his interstate jobs.  (Dkt. Nos. 32-1; 32-2).  These facts support the finding that Mr. Vorburger belongs to a class of interstate transportation workers engaged in moving goods.  See Gabay, 671 F. Supp. 3d at 384 (describing a long-distance truck driver as belonging to "a class of workers who directly supervise, through planning, scheduling, and otherwise orchestrating, long-distances moves").

Next, we must determine "whether that class of workers is engaged in foreign or interstate commerce."  Saxon, 596 U.S. at 455.  As the Supreme Court recognized, "any class of workers directly involved in transporting goods across state or international borders falls within [Section] 1's exemption."  Id. at 457.  Here, Mr. Vorburger has established that he transported goods across state borders because he drove several interstate routes while transporting goods for Defendants.  (See Dkt. Nos. 32 ¶ 12; 32-1).  Although Defendants claim that most of Mr. Vorburger's routes were intrastate, they do not dispute that Mr. Vorburger engaged in moving goods interstate on at least some occasions.  (See Dkt. No. 34 ¶ 13).  In fact, Perfect Moving's website describes its services as offering "interstate moving services" and "long distance moving services."  (Dkt. No. 30-2 at 4–6).  Therefore, the class of workers to which Mr. Vorburger belongs is engaged in interstate commerce.  See Smith v. Allstate Power Vac, Inc., 482 F. Supp. 3d 40, 46–47 (E.D.N.Y. 2020) (finding that Section 1 exemption applied to driver who delivered waste interstate on two occasions).

Accordingly, Mr. Vorburger has demonstrated that he falls within the class of interstate transportation workers to whom the Section 1 exemption applies, and therefore, the FAA does not compel arbitration of his claims.  See Saxon, 596 U.S. at 463 (finding that airline ramp

9

supervisor fell within Section 1 exemption); Gabay, 671 F. Supp. 3d at 387 (finding that supervisor of long-distance movers was a transportation worker to whom Section 1 exemption applied and therefore could not be compelled to arbitrate).

### 2. New York law requires Mr. Vorburger to arbitrate his claims

Citing the Arbitration Agreement's reference to the FAA, Mr. Vorburger argues that New York law does not apply to the Arbitration Agreement. (Dkt. No. 28 at 18–21).[6] Defendants argue that even if the Section 1 exemption applies to Mr. Vorburger, the inapplicability of the FAA does not preclude the applicability of state law, and therefore, the Court should apply state law to compel Mr. Vorburger to arbitrate his claims. (Dkt. Nos. 24 at 13 n.1; 33 at 4–7).

### a. New York law applies

As stated in Section III.A. supra, the inapplicability of the FAA does not preclude enforcement of an arbitration agreement under state law. See Valdes, 292 F. Supp. 2d at 529; Diaz, 167 F. Supp. 3d at 381. When the FAA is not applicable to an arbitration agreement, "the law of the jurisdiction having the greatest interest in the litigation will be applied." Islam, 524 F. Supp. 3d at 359 (quoting Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 672 F.3d 155, 157 (2d Cir. 2012)). Here, the parties agree, and the record shows, that New York has the "greatest

---

[6] Although Mr. Vorburger also argues that Defendants waived any argument that state law provides an avenue to compel arbitration (Dkt. No. 28 at 22–23), Defendants did in fact assert in their opening brief, albeit in a footnote, that the Arbitration Agreement is enforceable under New York law. (Dkt. No. 24 at 13 n.1). Nevertheless, even if Defendants had not referenced New York law, Mr. Vorburger first raised the Section 1 exemption in his opposition, and therefore, Defendants did not waive the argument. See Bayway Refining Co. v. Oxygenated Mktg. and Trading A.G., 215 F. 3d 219, 226 (2d Cir. 2000) (stating that "reply papers may properly address new material issues raised in the opposition papers"). The emails between counsel demonstrate only that Mr. Vorburger's counsel mentioned an FAA exemption to Defendants' counsel, but did not specify which exemption and provided no further detail. (See Dkt. No. 30-1).

interest in the litigation." (See Dkt. Nos.  1 ¶¶ 13–15; 33 at 4 n.3).  In addition, the parties agreed that New York law governs the ICA.  (Dkt. Nos. 30-3 § 10(a); 34-3 ¶ 10(a)).

Mr. Vorburger relies on three cases – two of which are outside the Second Circuit – to support his position that the Court should not apply New York law to enforce the Arbitration Agreement.  He first cites Rodgers-Rouzier v. Am. Queen Steamboat Operating Co., LLC, 104 F.4th 978 (7th Cir. 2024), in which the court concluded that Indiana law "governed the agreement in the background, regardless of the FAA's application," and assessed the enforceability of the choice of law clause, i.e., the clause designating the FAA as governing the arbitration agreement, under state law. Id. at 992–93.  Because "Indiana law generally favors enforcement of contractual stipulations to the choice of law[,]" and the parties had agreed that the arbitration agreement would be governed by the FAA, the court found that Indiana law did not compel the plaintiff to arbitrate. Id.  Unlike Indiana law, however, "New York law favors arbitration, interfering as little as possible with the freedom of consenting parties[] to submit disputes to arbitration." Diaz, 167 F. Supp. 3d at 381 (quoting New York law).  The parties' intent to arbitrate claims is clear from the language in the Arbitration Agreement.  (See Dkt. Nos. 25-1 ¶ 1; 34-2 ¶ 1) ("**BY AGREEING TO ARBITRATE ALL DISPUTES, THE PARTIES TO THIS AGREEMENT AGREE THAT ALL SUCH DISPUTES WILL BE RESOLVED THROUGH BINDING ARBITRATION BEFORE AN ARBITRATOR AND NOT BY WAY OF A COURT OR JURY TRIAL**.").  Accordingly, Rodgers-Rouzier does not prevent us from applying New York law.

Mr. Vorburger also relies on Rittmann v. Amazon.com, Inc., 971 F.3d 904 (9th Cir. 2020), in which the court analyzed the FAA's inapplicability to an arbitration clause governed by the FAA because the plaintiff was a driver engaged in interstate commerce.  The court decided not to

apply Wahington law because the parties specifically agreed that Washington law would not apply to the arbitration clause, and therefore, to apply Washington law would result in "rewriting the contract." Id. at 920.  Because the FAA could not apply because of the Section 1 exemption, the Rittmann court construed the ambiguity in the contract against the defendants and found that there was no valid agreement to arbitrate. Id. at 920–21.  Here, on the other hand, the ICA's choice of law provision designates New York law.  (Dkt. Nos. 30-3 ¶ 10(a); 34-3 ¶ 10(a)).  Accordingly, there is "nothing improper about applying standard choice of law principles to reach the conclusion that New York law applies to the [A]rbitration [A]greement in the absence of the FAA."  Islam, 524 F. Supp. 3d at 360; see Valdes, 292 F. Supp. 2d at 530 (applying New York law "in light of the parties' reliance on New York law and that state's interest in th[e] litigation").

The third case on which Mr. Vorburger relies is Gabay v. Roadway Movers, Inc., 671 F. Supp. 3d 371 (S.D.N.Y. 2023).  There, however, the defendants failed to invoke state law as an alternative to compel arbitration, and therefore, the court did not consider that argument. Id. at 387 n.5.  Here, Defendants argued that the Court should apply state law in a situation such as this one, where Mr. Vorburger falls under an FAA exemption.  (See n.6, supra).  Therefore, Gabay does not prevent us from applying New York law to the Arbitration Agreement given the FAA's inapplicability.

Accordingly, the Court will apply New York law to the Arbitration Agreement.

### b. Compelling arbitration under New York law

"Under New York law, the Court addresses three threshold questions in deciding a motion to compel arbitration: (1) whether the parties made a valid agreement to arbitrate; (2) if so, whether the agreement has been complied with; and (3) whether the claim sought to be

arbitrated would be time-barred if it were asserted in state court." Zambrano v. Strategic Delivery Sols., LLC, No. 15 Civ. 8410 (ER), 2016 WL 5339552, at *9 (S.D.N.Y. Sept. 22, 2016). In contrast to the FAA, "New York arbitration law does not exempt transportation workers from arbitration." Diaz, 167 F. Supp. 3d at 381.

Here, Mr. Vorburger and Defendants entered into an unambiguous agreement — the Arbitration Agreement — to arbitrate claims or disputes regarding federal, state, or local wage-and-hour law . . . and claims arising under the . . . Fair Labor Standards Act . . . (Dkt. Nos. 25-1 ¶ 1(a); 34-2 ¶ 1(a)). The Arbitration Agreement also specifies the arbitration procedures, including the venue for the arbitration, discovery rules, and fees and costs. (Dkt. Nos. 25-1 ¶¶ 2–5; 34-2 ¶¶ 2–5). As for Mr. Vorburger's consideration, the "offer of [] employment alone is sufficient consideration to support an agreement for arbitration." Chen-Oster v. Goldman, Sachs & Co., 449 F. Supp. 3d 216, 241 (S.D.N.Y. 2020). Accordingly, the parties entered into a contractually valid agreement to arbitrate Mr. Vorburger's wage and hour claims, including the FLSA and NYLL claims. See Citigroup, 2022 WL 179203, at *6 (finding that clause providing that "any dispute regarding the applicability . . . of the benefit will be submitted to [] arbitration" evidenced "broad agreement to arbitrate questions involving the benefits afforded to [former employee]").

As to the second factor, by filing this action, Mr. Vorburger has not complied with the Arbitration Agreement. See Espinosa v. SNAP Logistics Corp., No. 17 Civ. 6383 (AT), 2018 WL 9563311, at *5 (S.D.N.Y. Apr. 3, 2018). As to the third factor, Mr. Vorburger's NYLL claims have a statute of limitations of six years, so he could timely file them in a New York state court. See N.Y. Labor Law § 663 (1), (3).

Accordingly, New York law compels the arbitration of Mr. Vorburger's claims.

### c. **The class action waiver is enforceable**

Mr. Vorburger argues that the class action waiver is enforceable under the FAA but not under New York law, and that the class action waiver violates public policy underlying the FLSA and NYLL.  (Dkt. No. 28 at 23–29).  Defendants argue that class action waivers are neither unconscionable nor violative of public policy under New York law, and therefore, the class action waiver is enforceable.  (Dkt. Nos. 24 at 21 n.3; 33 at 8–9).

Mr. Vorburger relies heavily on Gold v. N.Y. Life Insurance Co., 153 A.D.3d 216 (1st Dep't 2017), which held a class action waiver unenforceable because it violated the National Labor Relations Act ("NLRA") and was invalid under the FAA's savings clause.  Id. at 225.  Mr. Vorburger argues that based on Gold, many states have deemed class action waivers invalid.  (Dkt. No. 28 at 24).  He notes that although the New York Court of Appeals reversed the First Department's decision in Gold after the United States Supreme Court's decision in Epic Systems Corp. v. Lewis, 584 U.S. 497 (2018), Gold remains persuasive because Epic focused on the relationship between the NLRA and the FAA, and the FAA is not applicable to this action.  (See Dkt. No. 28 at 29).

"In Epic, the United States Supreme Court held that that the FAA contains an explicit congressional directive that arbitration agreements providing for individualized proceedings must be enforced, and neither the FAA's saving clause nor the NLRA suggests otherwise." Castro v. TCA Logistics Corp., No. 20 Civ. 2004 (JS) (ARL), 2021 WL 7287305, at *7 (E.D.N.Y. Mar. 31, 2021) (citing Epic, 584 U.S. at 505–25).  Because Mr. Vorburger is exempt from the FAA (see § III.B.1., supra), we must look to New York law, which, contrary to Mr. Vorburger's assertion, has upheld class action waivers in arbitration agreements.  See Castro, 2021 WL 7287305, at *7.  In

New York, "a contractual proscription against class actions is neither unconscionable nor violative of public policy." Horton v. Dow Jones & Co., Inc., 804 F. App'x 81, 84 (2d Cir. 2020) (citing Tsadilas v. Providian Nat. Bank, 13 A.D.3d 190, 191 (1st Dep't 2004); see Hahn v. JetBlue Airways Corp., No. 21 Civ. 6867 (CBA) (LB), 2022 WL 22908406, at *5 (E.D.N.Y. Aug. 25, 2022) (finding class action waiver enforceable after Gold overturned); see also Chen-Oster, 449 F. Supp. 3d at 251 n.28 (collecting cases applying New York law).

Accordingly, the Arbitration Agreement's class action waiver is enforceable under New York law and Mr. Vorburger's class and collective action claims shall be stricken from the Complaint.

### 3. This action is stayed pending arbitration

Having found that New York law compels arbitration of Mr. Vorburger's claims, and Defendants having requested a stay of this action pending the Arbitration (Dkt. No. 24 at 25), it is appropriate to stay this action during the pendency of the Arbitration. See Smith v. Spizzirri, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute and a party requests a stay pending arbitration, [Section] 3 of the FAA compels the court to stay the proceeding."); LeDeatte v. Horizon Media, 571 F. Supp. 3d 72, 77 (S.D.N.Y. 2021) ("[T]he FAA mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested.").

### 4. Mr. Vorburger's MTC is denied

Because we are compelling Mr. Vorburger to arbitrate his claims and staying this action pending the Arbitration, Mr. Vorburger's MTC is denied as moot. See Islam, 524 F. Supp. 3d at

15

356 (denying cross-motion to compel discovery related to Section 1 exemption where record demonstrated that exemption applied).

### IV. CONCLUSION

For the reasons set forth above, (i) the MTCA is **GRANTED**; (ii) Mr. Vorburger is **COMPELLED** to arbitrate his claims pursuant to the Arbitration Agreement; (iii) Mr. Vorburger's class action allegations are **STRICKEN** form the Complaint; (iv) this action is **STAYED** during the pendency of the Arbitration; and (v) Mr. Vorburger's MTC is **DENIED**.

The parties shall file a joint letter setting forth the status of the Arbitration by **Tuesday, February 17, 2026,** and **every 60 days thereafter** until the Arbitration has concluded.

The Clerk of Court is respectfully directed to close Dkt. Nos. 23 and 24.

Dated:        New York, New York
              December 17, 2025

SO ORDERED.

_____
SARAH L. CAVE
United States Magistrate Judge

16