UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEX VORBURGER, *on behalf of himself and all others similarly situated*,<br><br>                                    Plaintiffs,<br><br>            -against-<br><br>PERFECT MOVING AND STORAGE LLC,<br>SUMMER MOVING CORP,<br>ROCK KATNIC, and<br>JOHANNA ULLOA,<br>                                    Defendants. | Civil Case No.: 25-CV-06387-DEH-SLC |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OBJECTIONS TO THE
MAGISTRATE JUDGE'S ORDER GRANTING DEFENDANTS' MOTION TO
COMPEL INDIVIDUAL ARBITRATION, STRIKE PLAINTIFF'S CLASS AND
<u>COLLECTIVE ACTION CLAIMS, AND STAY THE ACTION</u>**

Caitlin Duffy, Esq.
Jon L. Norinsberg, Esq.
Bennitta L. Joseph, Esq.
JOSEPH & NORINSBERG, LLC
825 Third Ave, Suite 2100
New York, NY 10022
*Attorneys for Plaintiff and Putative Collective & Class*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

FACTUAL BACKGROUND .................................................................................................. 2

STANDARD OF REVIEW ..................................................................................................... 3

ARGUMENT ........................................................................................................................... 3

I      THE MAGISTRATE JUDGE ERRED IN COMPELLING ARBITRATION UNDER NEW YORK LAW AFTER CORRECTLY HOLDING THAT THE FAA DOES NOT APPLY ........................................................................................................................ 3

      A.  Arbitration Agreements are No More Enforceable than Other Contracts ............... 4

      B.  The FAA Section 1 Exemption Bars Compulsion of Arbitration Entirely ............. 4

      C.  By Invoking New York Law, the Order Impermissibly Creates an End-Run Around the FAA § 1 Exemption ............................................................................. 6

          1. The ICA Cannot Support Arbitration After *Silva* ............................................. 7

          2. The Agreements Contain Distinct and Unambiguous Choice-of-law Clauses..7

          3. The FAA Exemption Does Not Create a Gap Requiring that State law be Applied ............................................................................................................... 8

          4. Circuit Court Precedent Forecloses Substitution of State Law ......................... 8

II.     THE MAGISTRATE JUDGE ERRED IN STRIKING PLAINTIFF'S CLASS/COLLECTIVE CLAIMS ................................................................................. 10

CONCLUSION ...................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Bissonnette v. LePage Bakeries Park St., LLC*,
  49 F.4th 655 (2d Cir. 2022) ............................................................................... 6, 9, 10

*Bissonnette v. LePage Bakeries Park St., LLC*,
  601 U.S. 246 (U.S. 2024) .............................................................................................. 6

*Circuit City Stores v. Adams*,
  532 U.S. 105, 109 (2001) .............................................................................................. 4

*CITGO Asphalt Ref. Co. v. Frescati Shipping Co.*,
  589 U.S. 348 (2020) ...................................................................................................... 8

*Diaz v. Mich. Logistics Inc.*,
  167 F. Supp. 3d 375 (E.D.N.Y. 2016) ....................................................................... 9

*Epic Sys. Corp., v. Lewis*,
  584 U.S. 497 (2018) ................................................................................................ 1, 10

*Gillman v. Chase Manhattan Bank*,
  73 N.Y.2d 1 (1988) ...................................................................................................... 11

*Gold v. N.Y. Life Ins. Co.*,
  153 A.D.3d 216 (1st Dep't 2017) ............................................................................. 10

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  586 U.S. 63 (2019) ........................................................................................................ 7

*Hoffmann-La Roche Inc. v. Sperling*,
  493 U.S. 165 (1989) .................................................................................................... 11

*Islam v. Lyft, Inc.*,
  524 F. Supp. 3d 338 (S.D.N.Y. 2021) .................................................................... 8, 9

*McAllan v. Von Essen,*
  517 F. Supp. 2d 672 (S.D.N.Y. 2007) ....................................................................... 3

*Morgan v. Sundance, Inc.*,
  596 U.S. 411 (2022) ............................................................................................. 1, 4, 9

*New Prime Inc. v. Oliveira*,
  586 U.S. 105 (2019) ................................................................................................. 4, 5

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967) .................................................................................................... 4

*Silva v. Schmidt Baking Distrib.*, LLC,
    2025 U.S. App. LEXIS 333347 (2d Cir. Dec. 22, 2025) ....................................... 4,5,7

*Southwest Airlines Co. v. Saxon*,
    596 U.S. 450 (2022) .................................................................................................... 4

*Tolbert v. Queens College*,
    242 F.3d 58 (2d Cir. 2001) ......................................................................................... 3

*United States v. Snow*,
    462 F.3d 55 (2d Cir. 2006) ......................................................................................... 3

*Valdes v. Swift Transp. Co.*,
    292 F. Supp. 2d 524, (S.D.N.Y. 2003)……………………………………………….9

**Statutes**

Federal Arbitration Act ("FAA"), under Section 1 ................................................................. *passim*

**Rules**

Federal Rule of Civil Procedure 72(a) ....................................................................................... 1, 3

## **PRELIMINARY STATEMENT**

Pursuant to Federal Rule of Civil Procedure 72(a), Plaintiff Alex Vorburger respectfully submits the following objections to Magistrate Judge Sarah L. Cave's Opinion and Order dated December 17, 2025 (ECF No. 44) (the "Order"), granting Defendants' Motion to Compel Individual Arbitration, striking Plaintiff's class and collective action allegations, staying this action pending arbitration, and denied Plaintiff's cross-motion for limited discovery as moot. Plaintiff objects to the Order compelling arbitration and striking Plaintiff's class/collective action allegations.

As to the first issue, the Order should be reversed because, after correctly finding that Plaintiff is exempt from the Federal Arbitration Act ("FAA"), under Section 1, the Court nonetheless compelled arbitration under New York law, despite Defendants' waiver of that argument. In doing so, the Order erred by giving arbitration the very "special treatment" the Supreme Court forbade in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022). Once the FAA - - the sole source of authority to compel arbitration - - was off the table, the parties' agreement and precedent left no lawful basis to force arbitration through a state-law end-run that nullifies Congress's exemption.

Additionally, the Order erred in striking Plaintiff's class / collective action allegations because: (1) *Epic Sys. Corp., v. Lewis*, 584 U.S. 497 (2018) does not apply where the FAA is inapplicable; (2) the waiver is unconscionable under New York law; and (3) enforcement contravenes strong federal and state policies favoring collective wage enforcement.

Because the Order's decisions to compel arbitration and strike Plaintiff's class/collective allegations are clearly erroneous and contrary to law, the Court should reverse the Order.

## FACTUAL BACKGROUND

Defendants Perfect Moving and Storage LLC and Summer Moving Corp. operate delivery and moving companies engaged in contracts and deliveries throughout the tristate area and Florida, transporting customer property across state lines. (Compl. ¶ 3). Plaintiff Alex Vorburger worked for Defendants as a driver and mover from May 19, 2023, until his retaliatory termination on April 16, 2025. (Compl. ¶ 40). His primary duty was to physically transport customers' household goods and other property in Defendants' trucks, and he drove across state lines to pick up and deliver customer property on more than 149 separate occasions. (ECF No. 32, at ¶¶ 9-11).

On June 22, 2023, just over a month after he was hired, Defendants presented Mr. Vorburger with an Arbitration Agreement as a condition of his continued employment. The Arbitration Agreement was a pre-drafted, standard form document that Mr. Vorburger had no power to negotiate or modify. The Arbitration Agreement explicitly states that it is "governed by the Federal Arbitration Act, 9 U.S.C. section 1." (ECF 34-2, at ¶ 1). The Arbitration Agreement further provides, that "This Agreement is the full and complete agreement governing the formal resolution of disputes between the Contractor and the Company." (*Id*. at ¶ 6.)

Defendants also forced Mr. Vorburger to reclassify himself as an "independent contractor" as a condition of his continued employment and instructed him to form a separate corporate entity, INNOZENT CORP, through which Defendants would pay him. (Compl. ¶¶ 47-48). To further this scheme, Defendants required Plaintiff to enter into - - separate and apart from the Arbitration Agreement - - an Independent Contractor Agreement ("ICA"). (ECF 30-3.) The ICA, in relevant part, provides that "[u]nless the Parties have executed, and not opted out of, the Arbitration Agreement annexed hereto as Schedule B, or similar agreement, each party consents and submits

2

to the exclusive jurisdiction of the courts of the State of New York for the adjudication of any action or legal proceeding relating to or arising out of this Agreement." (ECF 30-3, at ¶ 10(b)).

Under this sham "independent contractor" arrangement, Defendants forced Mr. Vorburger to work over 80 hours per week without overtime, made unlawful deductions from his pay for their own business expenses, retaliated against him after he demanded his thousands in unpaid wages, and terminated him on April 16, 2025, when he refused to perform yet another uncompensated task. (Compl. ¶¶ 52-56, 84-87).

## STANDARD OF REVIEW

For non-dispositive motions, District courts "must consider timely objections" to a magistrate judge's ruling and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "A decision is 'clearly erroneous' when the Court is, 'upon review of the entire record, [] left with the definite and firm conviction that a mistake has been committed.'" *McAllan v. Von Essen,* 517 F. Supp. 2d 672, 678 (S.D.N.Y. 2007) (quoting *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006)). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.*

## ARGUMENT

**I. THE MAGISTRATE JUDGE ERRED IN COMPELLING ARBITRATION UNDER NEW YORK LAW AFTER CORRECTLY HOLDING THAT THE FAA DOES NOT APPLY**

As a threshold matter, Defendants waived any state law enforceability argument by dropping a perfunctory footnote in their opening brief and then pressing it in their reply, depriving Plaintiff of a fair opportunity to respond. It is well-settled that arguments raised only in footnotes or in a perfunctory manner are deemed waived. *See, e.g., Tolbert v. Queens College*, 242 F.3d 58,

3

75 (2d Cir. 2001). As such, the Order's reliance on Defendants' New York law arguments were in error.

A.  **Arbitration Agreements are No More Enforceable than Other Contracts**

The Supreme Court, in a unanimous decision, clarified that arbitration agreements are equally as enforceable as other contracts, "*but no more so*." *See Morgan*, 596 U.S. at 418 (*quoting Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, n.12 (1967)). "Accordingly, [] a court may not devise novel rules to favor arbitration over litigation." *Id*. "The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Id*.

B.  **The FAA Section 1 Exemption Bars Compulsion of Arbitration Entirely**

The Order properly concluded that Plaintiff "falls within the class of interstate transportation workers to whom the Section 1 exemption applies, and therefore, the FAA does not compel arbitration of his claims." (Order at 9-10.)  This finding was well-supported by the record and controlling Supreme Court and Second Circuit precedent. *See New Prime Inc. v. Oliveira*, 586 U.S. 105, 120 (2019) (holding that contracts of employment include those stylized as an "independent contractor," and are exempt under §1 of the FAA); *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 457 (2022) (reaffirming that §1 of the FAA "exempts only transportation-worker contracts")(citing *Circuit City Stores v. Adams*, 532 U.S. 105, 109 (2001)); *see also Silva v. Schmidt Baking Distrib.*, LLC, 2025 U.S. App. LEXIS 333347, *14-15 (2d Cir. Dec. 22, 2025) (holding that contracts - - analogous to the ICA here - - are contracts of employment within the meaning of §1 of the FAA and vacated the judgment of the district court compelling arbitration).

Once the Order correctly determined that Plaintiff is exempt under Section 1 of the FAA, the analysis should have ended. Supreme Court precedent makes clear that Section 1 exempts

4

transportation workers' contracts from the FAA altogether, and courts therefore lack authority to compel arbitration of those contracts under any provision of the FAA. *See New Prime*, 586 U.S. at 121 (holding that "the court of appeals was correct that it lacked authority under the [FAA] to order arbitration" where the plaintiff fell within the FAA §1 exemption).

In *New Prime*, the Court explained that before invoking §§ 3 or 4 of the FAA, a court must first determine whether the contract at issue falls within the § 1 exemption. *Id*. at 110-11. Once that's been determined, courts "are not free to pave over bumpy statutory texts in the name of more expeditiously advancing a policy goal. Rather, the Court should respect the limits up to which Congress was prepared to go when adopting the Arbitration Act." *Id*. at 120-121 (internal citations and quotations omitted) (declining petitioners' suggestion "to order arbitration anyway under its inherent authority to stay litigation in favor of an alternative dispute resolution mechanism of the parties' choosing").

That conclusion is reinforced by the Second Circuit's recent decision in *Silva,* 2025 U.S. App. LEXIS 33347, which squarely rejected attempts to circumvent the FAA's Section 1 exemption through contractual formalisms. The court held that, where a transportation worker is required to contract through a business entity created at the employer's behest, the agreement remains a "contract[] of employment" within the meaning of Section 1, and the FAA therefore does not apply. *Silva*, 2025 U.S. App. LEXIS 33347, at *1–2, *10–12. Critically, the Second Circuit warned that allowing arbitration in such circumstances would create "a potential loophole that could undermine § 1's purpose" and would "render the exception a nullity," permitting employers to evade Congress's deliberate exclusion of transportation workers from mandatory arbitration. *Id.* at *12–13 (internal citations and quotations omitted). The *Silva* court expressly declined to "allow employers to circumvent Congress's exception of transportation workers from

the FAA's reach by requiring those workers to take the corporate form." *Id*. at *16. That reasoning applies with equal force here: once the FAA exemption attaches, courts may not compel arbitration through doctrinal or contractual end-runs that defeat Congress's statutory design.

That same concern was forcefully articulated by Judge Pooler in dissent in *Bissonnette v. LePage Bakeries Park St., LLC*, 49 F.4th 655, 668 (2d Cir. 2022), *vacated and remanded*, 601 U.S. 246 (U.S. 2024). Judge Pooler warned that courts must not permit employers to evade the FAA's transportation-worker exemption through formalistic characterizations of industry or contractual structure, emphasizing that "a trucker is a transportation worker regardless of whether he transports his employer's goods or the goods of a third party." 49 F.4th at 668 (internal citations and quotations omitted). She cautioned that focusing on the employer's line of business rather than the actual work performed would improperly narrow § 1 and undermine Congress's intent. *Id*. at 667–669. Although dissenting, Judge Pooler's reasoning underscores a critical point directly relevant here: Section 1 cannot be neutralized by doctrinal maneuvering or contractual reframing that divorces the exemption from the transportation work Congress sought to protect.

The Order's conclusion that the FAA does not compel arbitration should have been dispositive. Where the FAA - - the sole federal statute authorizing compulsory arbitration - - does not apply, there is no statutory basis to force arbitration at all.

### C.    By Invoking New York Law, the Order Impermissibly Creates an End-Run Around the FAA § 1 Exemption

The Order concluded (albeit incorrectly) that New York law applies because "the parties agree, and the record shows, that New York has the 'greatest interest in the litigation'" and because "the parties agreed that New York law governs the ICA." (Order at 10–11 (citing ECF Nos. 30-3 § 10(a); 34-3 § 10(a))).

### 1. The ICA Cannot Support Arbitration After *Silva*

First, the Order's reliance on the ICA as a basis to compel arbitration cannot stand in light of *Silva*. As discussed *supra*, *Silva* held that independent-contractor agreements materially indistinguishable from the ICA here constitute "contracts of employment" for purposes of the FAA and therefore fall within § 1's exemption, foreclosing reliance on such agreements - - directly or indirectly - - to compel arbitration under the FAA. *See Silva*, 2025 U.S. App. LEXIS 33347, at *18–19 ("We decline to allow employers to circumvent Congress's exception of transportation workers from the FAA's reach by requiring those workers to take the corporate form."). Because the ICA governs the parties' work relationship and is subject to the same exemption, it cannot supply a lawful basis for arbitration or be used to import state arbitration law to reach the same result. Once the ICA is properly understood as an exempt employment contract, the Order's arbitration analysis collapses at the threshold.

### 2. The Agreements Contain Distinct and Unambiguous Choice-of-law Clauses

Separately, "[u]nder the Act, arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67 (2019). Here, the Order's reasoning improperly conflates two separate agreements with distinct choice-of-law provisions. The ICA and the Arbitration Agreement are separate documents, albeit connected by the ICA's annexation of the Arbitration Agreement as "Schedule B." (ECF Nos. 30-3; 34-3.) The ICA contains a choice-of-law provision stating that it "shall be governed by and construed in accordance with the laws of the State of New York." (ECF Nos. 30-3 § 10(a); 34-3 § 10(a)). The Arbitration Agreement, however, contains its own express choice-of-law provision stating: "This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. section 1." (ECF No. 34-2 ¶ 1.) It further makes clear that it is independent from the ICA, providing

7

that it is "the full and complete agreement governing the formal resolution of disputes between the Contractor and the Company." (*Id.* ¶ 6.)

Under basic principles of contract interpretation, "[w]here the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." *CITGO Asphalt Ref. Co. v. Frescati Shipping Co.*, 589 U.S. 348, 355 (2020) (internal citations and quotations omitted). Here, the Arbitration Agreement's designation of the FAA as governing law is unambiguous, while the ICA separately provides that it is governed by New York law. The text thus reflects the parties' intent to subject the underlying work relationship and the arbitration agreement to different legal regimes.

### 3. *The FAA Exemption Does Not Create a Gap Requiring that State law be Applied*

The Order's foundational error is its premise that the FAA's § 1 exemption creates an "absence" of governing law that must be filled through choice-of-law analysis. Relying on that premise, the Order states that "[w]hen the FAA is not applicable to an arbitration agreement, the law of the jurisdiction having the greatest interest in the litigation will be applied." (Order at 10 (quoting *Islam v. Lyft, Inc.*, 524 F. Supp. 3d 338, 343-344 (S.D.N.Y. 2021)). But there is no gap to fill. Schedule B expressly provides: "This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1." (ECF No. 34-2 ¶ 1). Section 1's transportation-worker exemption is not an external limitation on that choice; it is part of the FAA itself. (*See* ECF No. 34-2 ¶ 1). By selecting the FAA as the governing law, the parties selected the statute in full, including its express scope and exclusions. In other words, the parties chose a governing law that, by its own terms, does not compel arbitration for exempt transportation workers. That is not a failure of the choice-of-law clause; it is its operation. The Order erred by treating the FAA exemption as creating a void

8

requiring substitution of state law, when it instead gives effect to the parties' agreed-upon governing law exactly as written.

### 4.  *Circuit Court Precedent Forecloses Substitution of State Law*

This conclusion is compelled by the combined force of *Rodgers-Rouzier v. American Queen Steamboat Operating Co., LLC*, 104 F.4th 978 (7th Cir. 2024), *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020), and the Supreme Court's decision in *Morgan,* 596 U.S. 411.[1] In *Rodgers-Rouzier* and *Rittmann*, the Seventh and Ninth Circuits rejected precisely the maneuver the Order adopts here: compelling arbitration under state law after determining that the FAA - - the parties' expressly chosen governing law for arbitration - - does not apply because of the § 1 exemption. Both courts held that where parties deliberately select the FAA to govern arbitrability, that choice must be enforced according to its terms; when the FAA is unavailable by statute, there is no basis to substitute state arbitration law absent clear contractual authorization. *Morgan* independently forecloses the Order's reasoning by prohibiting courts from affording arbitration special solicitude once the governing law fails. After the FAA was found inapplicable, the Court was required to apply neutral contract principles and enforce the agreement as written, not to preserve arbitration by invoking a general pro-arbitration policy.

As Judge Pooler explained in her dissent in *Bissonnette*, district courts have enforced arbitration under state law only where the arbitration clause "did not plausibly suggest that the parties intended for the clause to be discarded in the event that the FAA was found inapplicable." *Id*., 49 F.4th at 681 (Pooler, *J*., dissenting) (quoting *Islam*, 524 F. Supp. 3d at 359). Where,

---

[1] Notably, the district court cases the Order relies on to find New York law compels arbitration - - *Islam*, 524 F. Supp. 3d at 343-344; *Valdes v. Swift Transp. Co.*, 292 F. Supp. 2d 524, 529 (S.D.N.Y. 2003); and *Diaz v. Mich. Logistics Inc.*, 167 F. Supp. 3d 375, 381 (E.D.N.Y. 2016) - - all predate *Morgan*, which makes clear that courts may not preserve arbitration by resorting to pro-arbitration presumptions once the governing law fails.

9

however, the agreement itself ties arbitrability to the FAA and forecloses fallback to inconsistent state law, "the arbitration agreement itself prohibits recourse to [state] law should the FAA be held inapplicable." *Id.* at 682. That is precisely the situation here. Unlike the district court cases relied on in the Order - - which either assumed state law could apply or involved agreements silent on governing law - - the Arbitration Agreement expressly and exclusively designates the FAA. New York arbitration law, like Connecticut law in *Bissonnette*, contains no analogue to the FAA's § 1 exemption and is therefore inconsistent with the parties' chosen framework. The Order's reliance on contrary district court authority was therefore misplaced.

## II. THE MAGISTRATE JUDGE ERRED IN STRIKING PLAINTIFF'S CLASS/COLLECTIVE CLAIMS

Even if arbitration could somehow be compelled, which it cannot, the Order erred by enforcing the class action waiver under New York law.

First, the Order's reliance on New York cases enforcing class action waivers is misplaced because those decisions rest entirely on *Epic Systems*, 584 U.S. 497 (2018) which was premised on FAA preemption. Here, the Order expressly found that Plaintiff is an exempt transportation worker under FAA § 1 and that "the FAA does not compel arbitration." (Order at 9–10). Once the FAA is inapplicable, *Epic Systems* provides no basis to enforce a class action waiver. Indeed, the Supreme Court emphasized that its holding was "specific to the statute before us." *Epic Systems*, 584 U.S. at 525 n.7.

Absent FAA preemption, New York law does not permit contractual elimination of workers' rights to engage in concerted legal activity. Prior to *Epic Systems*, the First Department held that class action waivers in employment agreements violate the NLRA and are unenforceable under New York law. *Gold v. N.Y. Life Ins. Co.*, 153 A.D.3d 216, 225-232 (1st Dep't 2017), *rev'd on other grounds*, 32 N.Y.3d 1009 (2018). Where, as here, the FAA does not apply, *Gold*'s

substantive analysis remains persuasive. New York's protections for concerted activity under the NYLRA and the New York Constitution are at least as robust as their federal counterparts.

Second, the class action waiver is unconscionable under New York law. Plaintiff was a new worker instructed to form a company and, two days later, required to sign a non-negotiable arbitration agreement as a condition of continued work. This extreme procedural unconscionability - - gross inequality of bargaining power, lack of meaningful choice, and coercive timing - - renders the waiver unenforceable, particularly where it eliminates substantive statutory rights under the FLSA and NYLL to pursue collective and class actions. *See Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 10 (1988).

Finally, enforcing the waiver undermines fundamental federal and state policies favoring collective enforcement of wage laws. Collective actions are essential to vindicating low-value wage claims that are otherwise economically infeasible to pursue individually. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The waiver here operates as a de facto immunity from wage-and-hour liability.

For these reasons, the class action waiver cannot be enforced, and the Order should be reversed.

**CONCLUSION**

For the foregoing reasons and the arguments in Plaintiff's prior briefing, Plaintiff respectfully requests that the Court overrule the Order compelling arbitration and striking Plaintiff's class and collective claims and lift the stay to allow Plaintiff to proceed in this forum with his class and collective claims.

Date:　New York, New York
　　　　December 31, 2025

　　　　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　**JOSEPH & NORINSBERG, LLC**

　　　　　By:　　_[signature]_____
　　　　　　　　Caitlin Duffy, Esq. (CD 8160)
　　　　　　　　Jon L. Norinsberg, Esq.
　　　　　　　　Bennitta L. Joseph, Esq.
　　　　　　　　825 Third Avenue, Suite 2100
　　　　　　　　New York, New York 10022
　　　　　　　　E-mails: caitlin@employeejustice.com;
　　　　　　　　jon@norinsberglaw.com

　　　　　　　　*Attorneys for Plaintiff*
　　　　　　　　*and Putative Collective & Class*

## **WORD COUNT CERTIFICATION**

I, Caitlin Duffy, counsel for Plaintiff, hereby certify pursuant to Plaintiff's Objections To The Magistrate Judge's Order Granting Defendants' Motion To Compel Individual Arbitration, Strike Plaintiff's Class And Collective Action Claims, And Stay The Action excluding the caption, table of contents, table of authorities, signature block, and any certificates of service or compliance, the above-referenced brief contains 3356 words. I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 31, 2025

                                                  Respectfully submitted,

                               By:  _____
                                     Caitlin Duffy, Esq. (CD 8160)